

SIGNED this 20th day of May, 2016.

_____
TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 15-11166-tmd |
| | § | |
| RUSSELL WADE COLLIAU | § | |
| MARCI KAM COLLIAU | § | CHAPTER 7 |
|    Debtors. | § | |

## **MEMORANDUM OPINION**

Under the snapshot rule, exemptions are determined by the law and the facts as they exist on the petition date. This Court previously determined that, as of the petition date, the Debtors' equity in their homestead was less than the maximum allowed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Can the trustee nonetheless keep the case open and wait to see if the property appreciates to a higher value, and then claim that value for the estate?

1

I. **BACKGROUND AND FACTS**

A. **Framing the dispute.**

Like many of Texas' newest residents, Russell and Marci Colliau (the "Debtors") moved here from California. While they lived in California, the Debtors were sued by Roy Higgs. Over the next three years, and while that litigation was pending, the Debtors sold several properties in California. They then used some of the sales proceeds to purchase property in Lakeway, Texas, which they now designate as their homestead. Two years after buying this home, the Debtors spent $11,156 on cosmetic repairs to the property.

One month after making the cosmetic repairs and less than three years after purchasing the property, the Debtors filed this case under chapter 7 of the Bankruptcy Code.[1] In their schedules, the Debtors listed their interest in the property as an exempt asset[2] and valued the property at $500,000, but subject to a $269,919 secured claim.[3] Higgs[4] and the chapter 7 trustee (the "Trustee") objected to the exemption, asserting that the Debtors used nonexempt proceeds from the sale of the California properties to purchase their homestead with the intent to hinder, delay, or defraud creditors, and that the property is therefore not exempt. The Debtors disputed these allegations. The parties also disputed the value of the property and the cost of necessary maintenance bearing on that value, but agreed that the exemption is capped at $311,350 under subsection 522(p) because the property was purchased within 1,215 days[5] of the bankruptcy.

---

[1] 11 U.S.C. § 101 et seq. Section references in the text shall be to the Bankruptcy Code unless otherwise indicated.

[2] *In re Colliau*, No. 15-11166, ECF 1, at 19 (Schedule C). The Debtors were entitled to claim the Texas exemption because they had lived in the Lakeway residence for more than two years. 11 U.S.C. § 522(b)(3)(A).

[3] *Id.* at 8 (Schedule A).

[4] On Schedule F, the Debtors listed Roy Higgs as a creditor with a $500,000 claim. *Id.* at 40 (Schedule F).

[5] About three years and four months.

2

### B. The Court's oral ruling of March 21, 2016.

In its ruling, the Court found that the value of the property was $585,000, meaning that with a mortgage lien of $269,000, the Debtors could not have equity worth more than $316,000, and likely had less depending on the cost of necessary deferred maintenance. The Court also found that the property sales made by the Debtors in California, and the Debtors' move from California to Texas, were not done with an actual intent to hinder, delay, or defraud creditors, but were instead largely motivated by certain actions taken by Higgs in the California courts, and the offer of a job in Texas.

However, the Court did find that the $11,156 worth of improvements made by the Debtors on the eve of bankruptcy consisted of, for purposes of subsection 522(o) only, property disposed of with the intent to delay, hinder or defraud creditors. The Court then reduced the exemption cap of $311,000 to $300,000 to account for the improvements made on the eve of bankruptcy, and found that the cost of necessary maintenance easily exceeded $16,000, the difference between the new cap of $300,000 and the equity value of $316,000. Thus, the Court concluded that the Debtors' interest did not exceed the limit contained in subsection 522(p).

At the conclusion of the oral ruling, and in response to statements made by the Trustee's counsel, the Court asked for arguments on whether the ruling should be without prejudice to the ability of the Trustee to wait to see if the property appreciates in value above the subsection 522(p) cap, which would give the estate an interest in the property that the Trustee could then seek to sell. Predictably, the Debtors said no, and Higgs and the Trustee said yes. The Trustee also raised another issue, arguing that the improvements of $11,156 should be a direct charge against any equity held by the Debtors in the property.

3

## II. ANALYSIS

### A. Should the $11,156 cost of the improvements made shortly before bankruptcy be charged against the equity the Debtors own in the property?

On this point, the Trustee and Higgs are correct, and the Court's oral ruling is amended to conform to this opinion. In an effort to prevent abuse of the bankruptcy system, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") added several provisions to the Bankruptcy Code, two of which are at issue in this case: subsections 522(o) and (p). Subsection 522(o) reduces "the value of [a debtor's] interest in [the homestead]:"

> to the extent that such value is attributable to any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on the date the debtor had held property so disposed of.[6]

Subsection 522(p) provides that "a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate [$311,350][7] in value in . . . real or personal property that the debtor . . . claims as a homestead."[8]

Should the Court reduce the amount of the exemption cap in subsection 522(p) from $311,350 to $300,194 to account for the improvements? Or should the Court instead reduce the Debtors' realized homestead exemption, their actual equity, by $11,156? Put another way, do subsections 522(o) and 522(p) operate in conjunction or independently? In its oral ruling, the Court did the former. By doing so, however, the Court left the estate without any interest in the

---

[6] 11 U.S.C. § 522(o).
[7] The parties do not dispute that 11 U.S.C. § 522(m) allows the Debtors to double the amount of the exemption cap because they filed a joint case.
[8] 11. U.S.C. § 522(p).

4

property, despite the ruling on the eve of bankruptcy improvements. This result would seem to thwart the rather obvious remedial intent of these BAPCPA amendments.

So what does the statute actually say? First, subsections 522(o) and (p) make no express reference to each other, and this suggests they were meant to operate independently. More important, carefully parsing the language yields a result more in keeping with the apparent remedial goal of the statute. Subsection 522(o) reduces the "value of [the debtor's] interest" in the homestead.[9] The Debtors listed the value of their exemption in the schedules as "100% of FMV up to the exemption limit"[10] meaning that they understood that subsection 522(p) would limit their exemption to an "amount of interest" up to $311,000. Since their exemption was limited to an "amount of interest" equal to fair market value up to $311,000, it is this "interest"—the Debtors' actual equity—that must be reduced under subsection 522(o) by $11,156. Though not clear in the statute, the only sensible reading is that the amount by which the Debtors' interest is reduced is made available to the estate.[11]

But how does the Trustee then realize on the estate's $11,156 interest? The Trustee argues that the Court should impose an equitable lien on the Debtors' homestead so he can take the property and sell it.[12] The Court agrees, particularly since there is precedent in this district for that very remedy. In an unpublished order in *In re Cipolla*, Judge Gargotta sustained an objection to a debtor's homestead exemption and found that $86,000 of the debtor's equity in his

---

[9] 11 U.S.C. §522(o).
[10] *In re Colliau*, No. 15-11166, ECF 1, at 19 (Schedule C).
[11] *In re Presto*, 376 B.R. 554, 600 (Bankr. S.D. Tex. 2007) ("[I]f an objection under § 522(o) is sustained, the debtor retains possession of his homestead as exempt property, but will be liable to the estate for any amounts that satisfy the elements of § 522(o).").
[12] *Colliau*, No. 15-11166, ECF 65.

5

homestead was not exempt pursuant to subsection 522(o).[13] The order granted the estate an equitable lien to secure the estate's interest in the property and allowed the Trustee to sell it if the debtor failed to compensate the estate within six months.[14] In his oral ruling on the exemption, Judge Gargotta supported this ruling by adopting the reasoning from *In re Sissom,* an opinion from the Bankruptcy Court for the Southern District of Texas.[15]

This Court agrees with the courts in *Cipolla* and *Sissom* that an equitable lien is an appropriate way to implement subsection 522(o). Helpfully, subsection 105(a) authorizes courts to "issue any order . . . that is necessary or appropriate to carry out the provisions of this title."[16] This is particularly so when the order issued effectuates a specific provision in the Bankruptcy Code.[17] Thus, this Court will "carry out" subsection 522(o) by imposing an equitable lien on the Debtors' homestead to secure the estate's $11,156 interest in the property. In addition, the Court will give the Debtors ninety days to satisfy the lien before the Trustee can sell the property.

### B. Can the Trustee keep the case open and wait for the property to appreciate in value enough to allow him to claim an interest beyond the cap?

Filing a bankruptcy case creates an estate that consists of all property of the debtor, with exceptions not relevant.[18] Property can be removed from the estate if the debtor claims the

---

[13] *In re Cipolla*, No. 09-11199, ECF 26 (Bankr. W.D. Tex. 2010), *vacated and remanded on other grounds*, 476 Fed. App'x 301 (5th Cir. 2012) (the bankruptcy court's order after remand was affirmed at 541 Fed. App'x 473 (5th Cir. 2013), but the equitable lien was not at issue during the appeals).
[14] *Id.*
[15] *Cipolla*, No. 09-11199, ECF 23 at 14-15 (Transcript of 12/29/09 Oral Ruling) citing *In re Sissom*, 366 BR 677, 704-08 (Bankr.S.D.Tex. 2007) (reconciling the equitable lien with the Texas constitution, and reconciling a payoff period for the debtor with the trustee's duty to liquidate assets of the estate). *See also In re Corwin*, 2014 WL 1168714, at *47-49 (Bankr. S.D. Tex. 2014) (discussing precedents under state law for imposing an equitable lien on a homestead).
[16] 11 U.S.C. § 105(a).
[17] *Law v. Siegel*, 134 S. Ct. 1188, 1194-95 (2014) ("Section 105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits."); *U.S. v. Sutton*, 786 F.2d 1305, 1307-08 (5th Cir. 1986) ("Section 105(a) simply authorizes a bankruptcy court to fashion such orders as are necessary to further the purposes of the substantive provisions of the Bankruptcy Code.").
[18] 11 U.S.C. § 541(a)(1); *Law v. Siegel*, 134 S. Ct. 1188, 1192 (2014).

6

property as exempt on the schedule for exempt assets and no party in interest timely objects.[19] If a party in interest objects, the court must then determine whether the property is properly exempted under state or Federal law, whichever applies.[20] Property properly exempted "is not liable during or after the case for any debt of the debtor that arose [prepetition]"[21] or for administrative claims.[22] The "during or after" language suggests that once the exemption is established, it is permanent, and not subject to later review.

This is consistent with the so-called "snapshot rule," recently reaffirmed by the Fifth Circuit in *Brown v. Sommers (In re Brown)*.[23] The snapshot rule states that exemptions are determined by the law and facts as they exist on the petition date and that they do not change due to subsequent events.[24] Here, the Court determined the value of the home as of February 1, 2016, which is a reasonable proxy of what the property was worth on the petition date, just five months earlier. Based on that valuation, the Debtors' equity is below the cap imposed by subsection 522(p) and so the bankruptcy estate had no interest in the property on the petition date. Whether the property appreciates in value in the months and years to come is irrelevant because the exemption removed the property from the estate as of the petition date.[25]

---

[19] 11 U.S.C. § 522(l); Fed. R. Bankr. P. 4003; Official Form 6, Schedule C (1991), *replaced by*, Official Form 106, Schedule C (2015).

[20] Fed. R. Bankr. P. 4003(b-c).

[21] 11 U.S.C. § 522(c); *Schwab v. Reilly*, 560 U.S. 770, 775-76 (2010) ("If an interested party fails to object within the time allowed, a claimed exemption will exclude the subject property from the estate even if the exemption's value exceeds what the Code permits.").

[22] 11 U.S.C. § 522(k) (with exceptions that are not relevant here).

[23] *Brown v. Sommers (In re Brown)*, 807 F.3d 701, 708-10 (5th Cir. 2015).

[24] *Id.* at 708. *See also Myers v. Matley*, 318 U.S. 622, 628 (1943) (applying the snapshot rule); *White v. Stump*, 266 U.S. 310, 313 (1924) ("[T]he point in time which is to separate the old situation from the new in the bankrupt's affairs is the date when the petition is filed."); *In re D'Avila*, 498 B.R. 150, 153-57 (Bankr. W.D.Tx 2013) (discussing the snapshot rule).

[25] *In re Parsons*, 530 B.R. 411, 417 (Bankr. W.D. Tex. 2014) (citing *Viegelahn v. Frost (In re Frost)*, 744 F.3d 384, 390 (5th Cir. 2015)).

But wait, says the Trustee, in *Schwab v. Reilly*[26] the trustee did not object to an exemption asserted for an asset, and yet was allowed to later claim an interest in the asset.[27] The exemption statutes at play in *Schwab* limited the exemption to the debtor's "aggregate interest, not to exceed [cap amount] in . . . [exempt category of asset]."[28] In other words, the statutory dollar limitation was the very definition of what could be exempted, and the estate had an interest in any value in excess of that limit. The Trustee here argues that since subsection 522(p) limits the otherwise limitless Texas homestead exemption to an interest in the asset subject to the cap, like the exemption statutes at issue in *Schwab*, he, like the trustee in *Schwab*, can simply wait until the house appreciates and then sell it for any amount he can realize above the $311,000 cap. Same case, same result.

But *Schwab* is not the same case. In *Schwab*, the debtor asserted an interest in an asset that she valued at the exemption cap when she filed her schedules.[29] Later, after the deadline to object to exemptions passed, the trustee determined that the asset was worth more than the cap amount, and attempted to sell the estate's interest in that asset.[30] The Supreme Court held that because the debtor's exemption was limited to the capped amount, the estate had an interest in any value over the cap, and no objection was needed to retain that interest.[31] Here, the Trustee did timely object, and this Court found that the property was worth less than the cap, which meant that the estate had no interest in the property on the petition date. Because subsection

---

[26] *Schwab v. Reilly*, 560 U.S. 770 (2010).
[27] *Id.* at 782.
[28] *Id.* at 775.
[29] *Id.*
[30] *Id.* at 776.
[31] *Id.* at 782.

8

522(c) and the snapshot rule fixed the exemption as of the petition date, the property is no longer part of the estate and the Trustee cannot wait until it appreciates above the cap.[32]

Finally, Higgs cited *In re Hyman*[33] for the proposition that the snapshot rule should not apply where the property appreciates in value after the filing date. But *Hyman*, and a later, similar Ninth Circuit case,[34] and *Schwab* for that matter,[35] all dealt with exemption statutes that define the exemption in terms of a specific dollar amount.[36] The exemption statute here defines what may *not* be exempted, and does so not just in terms of a dollar limit, but also a temporal limit—the 1,215 days prior to the petition date. Here, the Debtors did not, during that 1,215 day period of time, acquire an interest exceeding the dollar limit, and this will remain true regardless of how much the property later appreciates in value.

### III.  CONCLUSION

Though the Trustee may not wait for the property to appreciate above the statutory cap set by subsection 522(p), the Court will by separate order impose an equitable lien on the homestead in the amount of $11,156, but allow the Debtors ninety days to pay the Trustee and thereby avoid a forced sale of the property.

---

[32] *See also In re Ayobami*, No, 15-35488, 2016 WL 828743 at *2 (March 2, 2016) (Isgur, J.) (when a debtor claims "100% of fair market value" in an asset subject to an exemption cap, later increases in value inure to the debtor's benefit, and not to the benefit of the estate).
[33] *In re Hyman*, 967 F.2d 1316, 1321 (9th Cir. 1992).
[34] *In re Gebhart*, 621 F.3d 1206, 1210-12 (9th Cir. 2010).
[35] *Schwab*, 560 U.S. at 770.
[36] *Schwab, Hyman*, and *Gebhart* are distinguishable on the same basis—in those cases the trustee had an interest in the property as of the petition date. In California, the estate has an interest in the homestead property itself because debtors can only exempt a specific dollar amount from the proceeds after the sale of their homes. In Texas, debtors can exempt the homestead property itself, *Parsons*, 530 B.R. at 417, and so the estate will only have an interest in the property if the debtor had equity above the cap set by subsection 522(p) on the petition date. *See In re Moore*, 442 B.R. 865, 867 (Bankr. N.D. Tex. 2010) (finding the analysis in *Schwab* inapplicable where the debtor used the Texas property exemptions to exempt the asset itself, rather than an interest in the asset). Here, this Court found that the equity was below the cap and so the estate had no interest in the property on the petition date.